**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JANE DOES I THROUGH III,** |
| **Plaintiff,** |
| **v.** |
| **DISTRICT OF COLUMBIA,** |
| **Defendant.** |

**Civil Action 01-02398  (HHK)**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are three mentally retarded adult women who receive habilitation services from the District of Columbia through the Department of Human Services and the Mental Retardation and Developmental Disabilities Administration ("MRDDA").  This court previously certified this matter as a class action for purposes of resolving plaintiffs' and the class members' claims for injunctive and declaratory relief.  Plaintiffs now move for class certification of their damage claims, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Upon consideration of the motion, the opposition thereto, and the record of the case, the court concludes that the motion must be denied.

**I. BACKGROUND**

Since at least 1978, it was the "custom" of the MRDDA to sign consent forms for elective surgery on its wards without having been appointed guardian and without consulting with the person having surgery.  In April 1990, this longstanding policy was put in writing.  Although the written policy has been amended on numerous occasions and has evolved over time, its salient aspects remained the same:  MRDDA continued to be authorized to provide consent for elective

medical procedures on its mentally retarded customers without making any subjective inquiry into those customers' wishes or values, and without attempting to ascertain what those customers *would* do if competent.

By their next friends, plaintiffs brought this action under 42 U.S.C. § 1983, asserting that their substantive and procedural due process rights secured by the Fifth and Fourteenth Amendments have been violated by the District's unlawful practice of authorizing elective surgical procedures on retarded persons in its care[1] without adequately attempting to ascertain their wishes or consult with family members.  Plaintiffs asserted these claims on their own behalf as well as for a putative class of all mentally retarded persons who have received, or will receive, habilitation services from the District of Columbia and for whom District officials have consented to elective surgical procedures.[2]

On November 21, 2005, the court granted plaintiff's motion for class certification in part, certifying a class for the purpose of determining plaintiffs' and the class members' claims for declaratory and injunctive relief.  At the same time, the court entered partial summary judgment against the District and permanently enjoined the District from consenting to elective surgical procedures in violation of the substituted consent standard.  The court, however, declined to certify the class for the purpose of determining plaintiffs' and the class members' claims for monetary relief, instead ordering the parties to brief the issue of the proper treatment of such

---

[1]   Such persons are variously referred to in this memorandum as "patients" (in that they receive medical treatment or undergo surgical procedures) and "consumers" (in that they utilize a range of services provided by MRDDA).

[2]   "Elective" surgical procedures are distinguished from emergency surgical procedures, which do not require the patient's consent if "it is the judgment of one licensed physician with the concurring judgment of another licensed physician that delay in obtaining consent for surgery would create a grave danger to the health of the customer."  D.C. Code § 7-1305.07.

claims.  Having reviewed the parties submissions on this issue, the court concludes that class

certification of the damage claims in this matter must be denied.

## II.  ANALYSIS

As the party moving for class certification, plaintiffs bear the burden of establishing that a

class exists, that all four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure have

been satisfied, and that the class falls within at least one of the three categories enumerated in

Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Hartman v. Duffey*,

19 F.3d 1459, 1468 (D.C. Cir. 1994); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 256

(D.D.C. 2002).  A district court exercises broad discretion in deciding whether plaintiffs have

carried their burden.  *Hartman,* 19 F.3d at 1471 (citing *Bermudez v. United States Dep't of

Agric.*, 490 F.2d 718, 725 (D.C. Cir. 1973)).  While courts may not conduct a preliminary inquiry

into the merits of a suit in order to determine whether it may be maintained as a class action,

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974), the court may consider matters

beyond the pleadings to ascertain whether the asserted claims or defenses are susceptible of

resolution on a class-wide basis.  *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.8 (D.C. Cir.

1984).

### 1.  Rule 23(a) Requirements

The four threshold requirements of Rule 23(a) applicable to all class actions are (1) that

the class be so large that joinder of all members is impracticable; (2) that there are questions of

law or fact common to the class; (3) that the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) that the representative parties will fairly and

adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  The court has previously

determined that plaintiffs had satisfied these four requirements in the context of certifying a class for injunctive and declaratory relief.  Mem. Op. & Order (Nov. 21, 2005) at 30.  While the determination of whether the Rule23(a) requirements have been met for purposes of certify a class for damage purposes is slightly different than a determination of whether such certification is appropriate for injunctive and declaratory relief, the court nonetheless believes that plaintiffs have satisfied their burden, primarily for the reasons stated in court's previous memorandum opinion.  Notably, the District does not dispute that Rule 23(a)'s requirements are satisfied.

### 3. Rule 23(b) Requirements

In addition to satisfying the four prerequisites stated in Rule 23(a), plaintiffs must also establish that the action falls within one of three categories of class action suits described in Rule 23(b).  Having certified the class pursuant to Rule 23(b)(2) for equitable and declaratory relief, plaintiffs now seek to certify the class pursuant to Rule 23(b)(3) for their damage claims.  Such certifications are referred to as "hybrid certifications."  *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997); *Bynum v. Dist. of Columbia*, 217 F.R.D. 43, 48–50 (D.D.C. 2003).  In *Eubanks*, the D.C. Circuit recognized that "the assumption of cohesiveness for purposes of injunctive relief that justifies certification as a (b)(2) class [may be] unjustified as to claims that individual class members may have for monetary damages."  110 F.3d at 96.  In such circumstances, a district court may adopt a hybrid approach and certify "a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3) protections including the right to opt out to class members at the monetary relief stage."  *Id.*; *see also Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998).[3]

---

[3]  Plaintiffs concede that the assumption of cohesiveness "breaks down substantially as to the class members' individual claims for monetary damages."  Pls.' Mot. to Certify at 9.

In order to be certified under Rule 23(b)(3), plaintiffs bear the burden of demonstrating that common issues "predominate over any questions affecting only individual members" and that a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The advisory committee notes for Rule 23(b)(3) state that "[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.

### a. Predominance

The first of the two Rule 23(b)(3) requirements—that the common issues predominate over the individual issues—"tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Plaintiffs insist that the proposed class is sufficiently cohesive, given the fact that all putative class members (1) are developmentally disabled; (2) are MRDDA patients; and (3) were forced to undergo an elective medical procedure after 1970 for which consent was unconstitutionally given on his or her behalf by a District official. Moreover, plaintiffs note that all class members are located in the same, very limited, geographical area, and the same law applies to each class member's claim.

The District does not dispute that the above issues are common to the putative class. Rather, the District opposes class certification on the ground that the putative class members' damage claims are "highly individualized" and are not susceptible to class treatment. Def.'s Opp'n at 2. The District is correct that the "nature of the damages sought can militate against class treatment." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997). If

the calculation of the damage claims were a mechanical task, the presence of individualized

claims would not be a barrier to class certification.  However, when "computation of damages

will require separate mini-trials, then the individualized damages determinations predominate

over common issues and a class should not be certified."  *Id.*; *see also Cruz v. American Airlines*,

No. 96-2817 (D.D.C. Mar. 18, 2002) (order denying to certify a class of airline passengers where

the computation of damages from lost luggage would mire the court "in an unmanageable series

of mini-trials that would destroy the efficiency rationale undergirding Rule 23").

Plaintiffs insist that separate mini-trials will not be necessary.  First, they claim that each

plaintiff and class member suffered comparable violations of their liberty interest and, as such,

each is eligible to recover comparable damages.  This is true to a point.  It is indeed correct that

the constitutional deprivation suffered by each putative class member is comparable.  It is also

correct that such deprivations would entitle each putative class member to a comparable nominal

damage award in the absence of any other compensable injury. *Carey v. Piphus*, 435 U.S. 247,

266 (1977); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986) ("[N]ominal

damages, and not damages based on some undefinable 'value' of infringed rights, are the

appropriate means of 'vindicating' rights whose deprivation has not cause actual, provable

injury.").  Where a putative class member has suffered compensatory damages, however, which

include not only out-of-pocket expenses but also injuries from mental or emotional distress, such

damage determination must be "grounded in determinations of plaintiffs' *actual* losses."

*Stachura*, 477 U.S. at 307; *see also Hobson v. Wilson*, 737 F.2d 1, 59 (D.C. Cir. 1984)

(compensatory damages for violation of a plaintiff's constitutional rights "may be recovered only

for actual injury suffered.").  Simply put, to secure more than a nominal recovery, "damage

awards [must] be limited to sums necessary to compensate plaintiffs for actual harm." *Doe v. Dist. of Columbia*, 697 F.2d 1115, 1123 (D.C. Cir. 1983).[4]

"*Carey* instructs us to look first to common law tort rules of recovery for pecuniary and non-pecuniary loss." *Hobson*, 737 F.2d at 60.  When "the interests protected by a particular branch of the common law of torts" closely parallels "the interests protected by a particular constitutional right[,] . . . it may be appropriate to apply the tort rules of damages directly to the § 1983 action." *Id.* (quoting *Carey*, 435 U.S. at 258).  The court concludes that the appropriate tort rules to be applied to this case are supplied by the common law torts of assault and battery. *See Haim v. Islamic Republic of Iran*,  425 F. Supp. 2d 56, 70 (D.D.C. 2006) (noting that the definition of battery is "an intentional, unpermitted, harmful or offensive contact with his person or something attached to it" and that for assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm") (citing *Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978) (battery); *Dist. of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003) (assault)).  The damages flowing from such torts are measurable and include both monetary and non-monetary damages.  *Dammarell v. Islamic Republic of Iran*,  404 F. Supp. 2d 261, 275

---

[4]   Plaintiffs argue that the "actual harm" suffered by the putative class need not be determined, but rather may be presumed.  Pls.' Reply at 15–16.  While it is true that injury may be presumed in some circumstances, this is not such a case.  As the Supreme Court has explained in *Stachura*, presumed damages "may be appropriate" when "a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish," 477 U.S. at 310–11, such as where the right to vote has been infringed upon.  *Id.* at 311 n.14.

Here, the compensatory damages sought by plaintiffs are not difficult to establish, for they involve the same types of monetary and non-monetary harms present in many cases.  Such damages are "familiar to the law, customarily proved by showing the nature of the circumstances of the wrong and its effect on the plaintiff."  *Carey*, 435 U.S. at 263–64.  "[N]either the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused."  *Id.* at 264.

(D.D.C. 2005) ("Once liability is established for [an] intentional tort[ ] such as . . . battery, a plaintiff is entitled at least to nominal damages, as well as to compensation for 'mental suffering, including fright, shame and mortification . . . .'") (quoting *Marshall*, 391 A.2d at 1380). Such damages are unique to each individual victim of the class of torts alleged here and are not generic to the class. The court agrees with the District that the damage calculation required here is highly individualized and a predominance of common issues is not present.

> b. *Superiority*

The second of the two Rule 23(b)(3) requirements asks whether a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs insist that a class action on damages would meet the superiority requirement because the alternative would be a series of individual lawsuits, very few of which, in their view, would even be brought. Pl.'s Mot. to Certify at 16–17. Defendant counters that individualized litigation on the question of damages is inevitable in any case, both because the damages inquiry is individualized and because class members may opt out, in any case. Def.'s Opp. at 13–14. The court agrees with defendant. As liability has already been determined, what remains to be litigated is the question of harm as to each plaintiff. And, as the court has noted, such a determination is inherently individualized. Thus little, if any, value as to efficiency would be gained by certifying the putative class for purposes of that inquiry. This is not a case where the putative class members were subjected to a systematically similar harm imposed upon them almost certainly against their will, as in, for example, a case of overdetention or unlawful personal searches by law enforcement. *See Bynum*, 217 F.R.D. at 48–49. Rather, the

alleged harms, the level of consent obtained (or not obtained), and the injuries allegedly suffered here varied significantly.

Plaintiffs make much of the threat that without class treatment, class members will not pursue their claims.  The court is not persuaded by this argument.  In the first instance, plaintiffs never explain why it is that individual claims will not be brought.  In any event, a number of factors present here actually increase the possibility that individual claims will be brought, including the court's prior determination of liability, the significance of the alleged harm, *see id.* at 49 (class action brought on behalf of strip-searched criminal detainees deemed a superior adjudication method where the individual claims were "so small that it would not be economically efficient for [the putative class members] to maintain individual suits"), and the availability of fee-shifting (which creates an incentive for potential counsel to represent the putative class members).

Plaintiffs bear the burden of showing both predominance of common issues over individual issues and superiority of class adjudication for purposes of Rule 23(b)(3) class certification.  As they have made neither showing, the court declines to certify the requested class for purposes of adjudicating plaintiffs' damages claims.

### III. CONCLUSION

For the forgoing reasons, it is this 5th  day of October, 2006, hereby

**ORDERED**, that plaintiffs' motion for class certification of plaintiffs' damages claims [#134] is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge
