UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES I THROUGH III,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>Defendants. | Civil Action 01-02398 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Jane Doe I, by her next friend, Duery Felton, Personal Representative of the Estate of Jane Doe II, and Linda Tarlow, Personal Representative of the Estate of Jane Doe III (collectively, "plaintiffs") bring this action under 42 U.S.C. § 1983 against the District of Columbia and the District's Mental Retardation and Developmental Disabilities Administration ("MRDDA") (collectively, the "District of Columbia") alleging that while Jane Doe I, Jane Doe II, and Jane Doe III were in the District of Columbia's care, the District of Columbia consented to the performance of non-emergency surgical procedures on them without authority to do so. This case is now before the court on the parties' cross-motions for summary judgment after its remand from the United States Court of Appeals for the District of Columbia Circuit (the "Court of Appeals"). Plaintiffs move for partial summary judgment seeking a ruling that they, and all class members for whom the District of Columbia consented to elective surgery between 1970 and December 1998, are entitled to summary judgment on the issue of liability [#167]. Plaintiffs also move for class certification for resolution of damages pursuant to FED. R. CIV. P. 23 and LCvR 23.1 [#166]. The District of Columbia moves for summary judgment on all of plaintiffs' claims [#172].

Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that plaintiffs' motions for partial summary judgement and class certification must be denied and the District of Columbia's motion for summary judgment must be granted in part and denied in part.

## I. BACKGROUND

**A.   Plaintiffs**

Jane Doe I, Jane Doe II, and Jane Doe III received habilitation services from the District of Columbia[1] and were institutionalized in District of Columbia facilities beginning in the 1960s.[2] In 1984, Jane Doe I became pregnant with her second child, previously having given birth to a healthy boy without developmental disabilities. According to plaintiffs, District of Columbia officials requested that she have an abortion, but Jane Doe I refused. Nevertheless, District of Columbia officials gave their consent for the abortion, which was subsequently performed. Plaintiffs assert that these officials never consulted with Jane Doe I's legal representative nor obtained authorization from a court. *See* Compl. ¶¶ 14-17.

Jane Doe II was diagnosed in 1994 with exotropia, a condition where one eye deviates from the other. According to plaintiffs, District of Columbia officials gave their consent for an elective surgical procedure without consulting Jane Doe II's mother. Compl. ¶¶ 18-20.

Jane Doe III became pregnant in 1978 and decided to carry her pregnancy to term.

---

[1] "Habilitation is the process by which a person with developmental disabilities is assisted in acquiring and maintaining skills to cope more effectively with the demands of his or her own person and of his or her environment, and to raise the level of his or her physical, mental and social capabilities." Compl. ¶ 6.

[2] Jane Doe II and Jane Doe III passed away during the course of this litigation.

Plaintiffs contend that District of Columbia officials gave consent for an abortion without consulting with Jane Doe III's legal representative and without obtaining judgment from a court. Compl. ¶¶ 21-23.

**B.      District of Columbia Law**

District of Columbia law in effect during the period challenged by plaintiffs specifies a procedure for the certification of incapacity to make health care decisions, and provides a list of those persons authorized to make health care decisions for someone so certified. D.C. Code § 21-2204(a) states: "Mental incapacity to make a health-care decision shall be certified by 2 physicians who are licensed to practice in the District and qualified to make a determination of mental incapacity." Section 21-2210 then directs:

> In the absence of a durable power of attorney for health care and provided that the incapacity of the principal has been certified in accordance with § 21-2204, the following individuals, in order of priority set forth below, shall be authorized to grant, refuse or withdraw consent on behalf of a patient with respect to the provision of any health-care service, treatment, or procedure.

D.C. Code § 21-2210(a). The provision then lists the following eight individuals: a court-appointed guardian or conservator, a spouse or domestic partner, an adult child, a parent, an adult sibling, a religious superior if the patient is a member of a religious order, a close friend, and the nearest living relative. *Id*. The decision to grant, refuse or withdraw consent shall be based on a good faith belief as to the best interests of the patient if the wishes of the patient are unknown and cannot be ascertained. *Id*. § 21-2210(b).

These laws were supplemented in 1998 with the "Mentally Retarded Citizens Substituted Consent for Health Care Decisions Emergency Amendment Act of 1998," a temporary law that was reauthorized several times. This Act stated that if an MRDDA consumer is certified as an

incapacitated individual in accordance with D.C. Code § 21-2204 and there is no known person reasonably available, mentally capable, and willing to act pursuant to D.C. Code § 21-2210, the MRDDA Administrator is authorized to "grant, refuse or withdraw consent on behalf of a customer with respect to the provision of a health care service, treatment or procedure provided that two licensed physicians have certified in writing that the health care service, treatment, or procedure is clinically indicated to maintain the health of the customer." Pls.' Ex. 1, D.C. Act 12-554 (Dec. 30, 1998).[3]

### C.    District of Columbia Custom and Policy

Although not the written policy of the District of Columbia before April 1990, it was the "custom" of the superintendent of Forest Haven, a MRDDA facility that provided services to the mentally retarded, to sign consents for elective surgery without having been appointed guardian. Pls.' Ex. 4 at 333-335. In 1990, this longstanding custom was set forth in Policy H-18. Pls.' Ex. 13. Policy H-18 required that, for "treatment and non-invasive diagnostic procedures," "[i]nformed consent must be given by the parent or Superintendent/Guardian." *Id*. at 2. While the policy noted that "[f]amily contact is attempted," Policy H-18, like its informal predecessor, outlined a consent mechanism by which the agency's superintendent alone, "on recommendation from the primary care physician, dental officer, or the Chief of Health Services signs the authorization form . . . granting the necessary permission for treatment." *Id*.

In 1992, Policy H-18 was replaced with Policy H-6. Pls.' Ex. 14. While the new policy incorporated Policy H-18's language regarding obtaining consent for treatment and procedures,

---

[3] Unless specified otherwise, all citations to plaintiffs' exhibits refer to the exhibits accompanying plaintiffs' motion for partial summary judgment [#167].

Policy H-6 stated, "[i]nformed consent must be given by the parent or Guardian," eliminating the "Superintendent" as an independent provider of informed consent. *Id*. at 2. However, it also stated that the MRDDA Administrator "will sign" the consent form after being "adequately advised" of the medical need for the procedure, "alternative treatments, expected outcome . . . , [and the] nature and degree of risks." *Id*. at 3.

In 1998, Policy H-6 was again superseded, this time by a policy that contained greater requirements for finding, informing and obtaining consent from family members. Pls.' Ex. 15. Where the MRDDA was able to locate family members to provide consent, the treating physician would be advised to contact the family member for consent. *Id*. at 4. Where the MRDDA was not able to locate a family member willing to consent, the MRDDA would prepare a package of information including materials provided by the physician and forward it to the then Office of Corporation Counsel for the District of Columbia with a cover letter requesting appointment of a guardian for the patient. *Id*. at 5-6.

This policy was replaced in 2003 ("2003 Policy"). Pls.' Mot. Prelim. Inj. Ex. 5 [#104]. The 2003 policy indicates that "[e]fforts should be made to provide information and explanations at the level of consumer comprehension," and that family members should be notified of a contemplated medical procedure and "given an opportunity to grant consent." *Id.* at 10. In cases where the consumer is certified as incapacitated and "there is no family members [sic] or other person available or willing to provide consent," the 2003 Policy indicates that the MRDDA Administrator "is authorized to grant, refuse or withdraw consent on behalf of a consumer" provided that "two (2) licensed physicians have certified, in writing, that the health care service, treatment, or procedure is clinically indicated to maintain the health of the consumer." *Id*. at 11.

**D.**     **Procedural Background**

This case is before the court on remand from the Court of Appeals after that court's review of and decision on this court's rulings granting plaintiffs' motions for an injunction and summary judgment. In 2005, this court held that the MRDDA's failure to inquire into the wishes of consumers before consenting to elective surgeries on their behalf was unlawful. The court enjoined the District of Columbia: (1) from consenting to elective surgical procedures for MRDDA consumers under the 2003 policy; (2) to follow the substituted consent standard, as provided by D.C. Code § 21-2210, in determining whether to grant, refuse, or withdraw consent for any elective surgery on any MRDDA consumer; and (3) to comply with the specific requirements of section 21-2210(b) by attempting to ascertain the "known wishes of the patient," an inquiry which is not limited to but which must include documented reasonable efforts to communicate with that person regarding her wishes. Order, *Does I though III v. District of Columbia*, Civ. Act. 01-02398 (April 29, 2005) [#112]. The order stated that if, after such inquiries, the wishes of the patient were unknown or could not be ascertained, the District of Columbia must then make a good faith determination of the best interests of the patient. *Id*. at 2.

Explaining its rationale for deciding to grant the injunction, the court found that the plaintiffs had identified two defects in the MRDDA's current consent policy which assertedly caused violations of their rights. *Does v. District of Columbia*, 374 F. Supp. 2d 107, 112 (D.D.C. 2005). First, the plaintiffs alleged that the MRDDA consents to elective surgical procedures without attempting to speak with or otherwise ascertain the wishes or concerns of the affected consumer. *Id*. at 112. Second, plaintiffs alleged that the MRDDA staff ignores and overrides family members who refuse consent to the consumer's proposed surgery. *Id.* This court held that

6

plaintiffs had shown a likelihood of success on the first of these allegations because plaintiffs had a right of bodily integrity that is violated when the substituted judgment procedure is not followed, including attempting to ascertain the wishes or concerns of the affected consumers. *Id.* at 116.  As to the second allegation, the court found that there were substantial uncertainties concerning whether the MRDDA actually ignores and overrides family members who refuse to consent and therefore held that it was inappropriate to grant preliminary injunctive relief on that claim. *Id.* at 116-17.  This court later granted partial summary judgment to the plaintiffs, holding the District of Columbia liable pursuant to 42 U.S.C. § 1983 on the basis of the findings it made when it granted plaintiffs' motion for a preliminary injunction. *Does I through III v. District of Columbia*, 232 F.R.D. 18, 33 (D.D.C. 2005).

The Court of Appeals reversed this court's grant of summary judgment, vacated this court's injunction, and directed the entry of judgment for the District of Columbia with respect to plaintiffs' demand for a declaratory judgment. *Doe ex rel. Tarlow v. District of Columbia*, 489 F.3d 376, 384 (D.C. Cir. 2007).  On appeal, the District of Columbia argued that neither District of Columbia statutory law nor the Due Process Clause of the Fifth Amendment requires the MRDDA to consider the healthcare wishes of intellectually disabled patients who have always lacked mental capacity to make healthcare decisions for themselves.  Exercising *de novo* review, the Court of Appeals held that the 2003 Policy complies with District of Columbia law and the requirements of procedural and substantive due process. *Id*.

The Court of Appeals held further that the MRDDA Administrator need not attempt to ascertain the wishes of consumers found to lack the capacity to make health care choices under District of Columbia law. *Id.* at 381.  Because plaintiffs have never been able to make informed

choices regarding their medical treatment, the Court of Appeals reasoned, their true wishes with respect to a recommended surgery are unknown and cannot be ascertained for the purposes of section 21-2210(b). *Id*. For the same reason, the Court of Appeals rejected plaintiffs' federal procedural due process claim. *Id*. at 382. Similarly, the Court of Appeals held that the District of Columbia had not violated plaintiffs' substantive due process rights because plaintiffs failed to show that the consideration of the wishes of a never-competent patient is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty. *Id*. at 383. The Court of Appeals rejected plaintiffs' reliance on *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990), which held that the due process clause permits a state to require clear and convincing evidence of an incompetent patient's wishes, articulated when she was competent, as to withdrawal of life-sustaining treatment, because the plaintiffs never had the capacity to make an informed and voluntary choice. *Id*.

The Court of Appeals "conclude[d] that, to the extent challenged in this case, the 2003 policy is consistent with D.C. statutory law and the Due Process Clause of the Fifth Amendment." *Id*. at 384. It therefore reversed this court's grant of summary judgment, vacated its injunction, and directed judgment for defendants with respect to plaintiffs' demands for declaratory and injunctive relief. The Court of Appeals did not address the "individual damages claims brought by [plaintiffs] based on alleged incidents that occurred more than a decade ago, before the adoption of the 2003 policy." *Id*.

## II. ANALYSIS

In their motion for partial summary judgment,[4] plaintiffs raise two claims. First, they raise a claim under 42 U.S.C. § 1983 against the District of Columbia for violation of the procedural due process and substantive due process rights of Jane Doe I, Jane Doe II, and Jane Doe III under the Fifth and Fourteenth Amendments to the Constitution. Second, they raise the same claim on behalf of putative class members. For its part, the District of Columbia seeks summary judgment on all of plaintiffs' claims.

### A.   The Law of the Case Doctrine Dictates that Plaintiffs' Motion for Summary Judgment Must Be Denied.

Plaintiffs argue that the Court of Appeals did not address, let alone decide, the issue they now raise: whether the policies in effect from 1970 until 1998 were constitutional. The policies during this time, they assert, are not identical to the 2003 Policy upheld by the Court of Appeals because the MRDDA was not legally authorized to consent to surgery during that time and the Court of Appeals did not engage the question of whether the MRDDA Administrator possesses some sort of inherent authority to consent to elective surgery on MRDDA consumers. Further,

---

[4] Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

plaintiffs contend, the 2003 Policy imposed new requirements on the MRDDA not included in previous policies. The District of Columbia rejoins that all of the issues plaintiffs now raise were finally decided, either directly or by implication, by the Court of Appeals or this court's previous decisions, and are therefore precluded by the law of the case doctrine. Plaintiffs' complaint alleges that the District improperly authorized surgical procedures from 1970 through the present, and all of the plaintiffs' current issues, the District of Columbia argues, are exactly the same as those presented in the complaint.

The "'[l]aw-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). This includes the mandate rule under which "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001) (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)). Thus, "when a case is appealed and remanded, the decision of the appellate court establishe[s] the law of the case, which must be followed by the trial court on remand." *Griffin v. United States*, 935 F. Supp. 1, 5 (D.D.C. 1995) (internal citation omitted).

An issue is precluded by the law-of-the-case doctrine when a higher court has affirmatively decided the issue, be it explicitly or by necessary implication. *PNC Fin. Servs. Group, Inc. v. C.I.R.*, 503 F.3d 119, 126 (D.C. Cir. 2007); *see Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 n. 14 (D.C. Cir. 1990) ("Questions that merely could have been decided do not become law of the case") (citing *Bouchet v. Nat'l Urban League*, 730 F.2d 799,

806 (D.C. Cir.1984)).  The law-of-the-case doctrine turns "on whether a court previously decided upon a rule of law . . . not on whether, or how well, it explained the decision." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks omitted).

Here, the Court of Appeals explicitly decided that Jane Doe I, Jane Doe II, Jane Doe III and similarly situated putative plaintiffs, who have never had the mental capacity to make health care decisions, do not have a right under District of Columbia law or the Due Process Clause of the Constitution to have their wishes considered when medical decisions are made on their behalf. *Tarlow*, 489 F.3d at 381-82.  Similarly, the Court of Appeals explicitly decided that "nothing in *Cruzan* supports the view that a person who has *never* had the capacity 'to make an informed and voluntary choice' with respect to medical treatment has a constitutional right under the Due Process Clause to have his or her wishes considered."  *Id*. at 383 (quoting *Cruzan*, 497 U.S. at 280).

The Court of Appeals also decided, by necessary implication, that the MRDDA Administrator's provision of consent, with respect to consumers found to not have the capacity to make medical decisions under D.C. Code § 21-2204(a), and where none of the persons identified in D.C. Code § 21-2210(a) is available or willing to provide or refuse consent, does not violate the Constitution.  Plaintiffs argue that the Court of Appeals decision is not relevant on this point because the Court of Appeals evaluated the constitutionality of the 2003 policy and it was not until 1998, after the period they now challenge, that the District of Columbia passed a law granting such authorization to the MRDDA Administrator.  This argument is not persuasive.

Plaintiffs specifically raised the question of the MRDDA Administrator's authority before the Court of Appeals, yet the Court of Appeals did not rely upon the 1998 law as the source of the

11

MRDDA's authority in its opinion.  Moreover, the Court of Appeals could not have relied upon the 1998 law because, as plaintiffs have explained to this court and the Court of Appeals, the 1998 law was temporary.  In fact, in their brief before the Court of Appeals in 2006, plaintiffs stated that the temporary legislation was no longer in effect, having expired in 2005.  Br. of Respondents, *Tarlow*, 2006 WL 3532947, at *44 (D.C. Cir. Nov. 27, 2006).  The Court of Appeals' decision could not have been based on temporary legislation that was, in fact, expired. *See Bullock v. Carter*, 405 U.S. 134, 141 n.17 (1972) (holding that a temporary law suspending the enforcement of a strict filing fee requirement that had been enjoined by a lower court did not render the case moot because the injunction would continue to have force and effect after the temporary law expired).

In their motion for partial summary judgment, plaintiffs identify three liberty interests protected by the Fifth and Fourteenth Amendments to the Constitution of which MRDDA consumers were allegedly deprived without due process by the District of Columbia:  "(i) making medical decisions for themselves," Pls.' Mot. Part. Summ. J. at 11 (citing D.C. Code § 21-2203 (presumption of capacity)), "(ii) having medical decisions made for them only by persons legally authorized to do so," *id.* (citing *In Re A.C.*, 573 A.2d 1235, 1237 (D.C. 1990), and D.C. Code §§ 7-1305.06, 21-2047, and 21-2210), and "(iii) their right to refuse medical treatment," *id*. (citing *Cruzan*, 497 U.S. at 278), "all as may be exercised only by lawfully authorized representatives," *id*. (citing D.C. Code § 21-2210(a)).  At oral argument, plaintiffs made clear that they primarily contend that prior to 1998 the MRDDA Administrator violated these liberty interests by consenting to elective medical procedures without any authority to do so.  As a component of that argument, plaintiffs secondarily assert that the MRDDA Administrator violated these liberty

interests by consenting to elective surgeries without attempting to obtain consent from, or ignoring the wishes of, those persons authorized to make health care decisions for plaintiffs under D.C. Code § 22-2210(a).  *See* Pls.' Mot. Summ. J. at 13 ("Because D.C. law at the time expressly provided for substituted consent to be exercised by a hierarchy of individuals in § 21-2210, the MRDDA's decades-long practice of making medical decisions outside that hierarchy flouted the very procedure that had been adopted for making health-care decisions for incapacitated persons.").

     Under the law of this case, plaintiffs' primary contention must be rejected.  The Court of Appeals upheld as constitutional the 2003 Policy which directs the MRDDA Administrator to consent to medical procedures under certain circumstances.  In upholding this policy, the Court of Appeals decided that the MRDDA Administrator has the authority to consent to such procedures, notwithstanding the statutes cited by plaintiffs, and that by authorizing to elective surgeries, the Administrator did not violate MRDDA consumers' liberty interests.  While plaintiffs point to the 1998 law temporarily granting the MRDDA Administrator this authority as the distinguishing factor between the constitutional 2003 Policy and the unconstitutional policies prior to 1998, as discussed above, the Court of Appeals could not have relied on this temporary law in deciding that the MRDDA Administrator had the authority to consent.  Therefore, just by consenting to an elective medical procedure, the MRDDA Administrator does not violate any of the liberty interests asserted by the plaintiffs.

     The Court of Appeals did not reach plaintiffs' second contention – namely that the MRDDA Administrator violated their liberty interests by consenting to elective surgeries without first attempting to obtain consent from, or after ignoring the wishes of, those persons authorized to

make medical decisions for MRDDA consumers in D.C. Code § 21-2210(a). Before the appeal in this case, this court decided that "there were substantial uncertainties concerning whether the MRDDA actually does" ignore or override family members who refuse consent, and so concluded that it was inappropriate to grant preliminary injunctive relief on that claim. *Does*, 374 F. Supp. 2d at 116-17. Once again, the court finds that a genuine issue of material fact remains in dispute as to whether the MRDDA had a custom or policy of failing to contact, or ignoring or overriding the wishes of, those persons authorized to consent on MRDDA consumers' behalf. Consequently, summary judgment on this issue is not appropriate.[5]

**B.  The District of Columbia's Motion for Summary Judgment Must Be Granted in Part and Denied in Part.**

The District of Columbia moves for summary judgment on all of the claims raised in plaintiffs' complaint. Plaintiffs' complaint alleges three counts – Count I alleges constitutional and civil rights violations under 42 U.S.C. § 1983 on behalf of the named plaintiffs, Count II alleges constitutional and civil rights violations under 42 U.S.C. § 1983 on behalf of putative class members, and Count III demands injunctive relief for these violations. As plaintiffs recognize, the Court of Appeals ruled that injunctive relief is inappropriate, and therefore the court turns to Counts I and II, which are identical except that one is on behalf of the named plaintiffs and the other is on behalf of the putative class.

---

[5] In their reply in support of their motion for partial summary judgment and in their response to the District of Columbia's motion for summary judgment, plaintiffs argue for the first time in this litigation that the District of Columbia failed to follow the "best interests" standard required by D.C. Code § 21-2210(b) and the Court of Appeals' opinion. Plaintiffs may not raise a new argument at this stage of the litigation. Moreover, plaintiffs do not appear to argue that the District of Columbia's alleged failure to follow the best interests standard is a violation of their federal due process rights.

The actions that plaintiffs allege violate the Constitution in their complaint include: (1) the District of Columbia's grant of consent without legal authority, Complaint ¶¶ 32, 34, 36, 39, 47, 49; (2) the District of Columbia's failure to ascertain the intent of Jane Doe I, Jane Doe II, and Jane Doe III with regard to the surgeries or obtain proper informed consent on their behalf, *id.* ¶¶ 33, 46; and (3) the District of Columbia's failure to provide them with any pre-deprivation legal process whatsoever, *id.* ¶¶ 33, 41, 46, 54.[6] Plaintiffs explain their second allegation, stating that "no attempt was ever made to consult with the individual's family or guardian prior to authorizing these surgeries," and "[n]o attempt was ever made to confer with a family member or guardian, nor was any attempt made to obtain legal consent from an authorized representative as required by D.C. statutes and court decisions." Complaint ¶¶ 8, 11.

The Court of Appeals decided against plaintiffs on most of these claims. As discussed in subsection A, *supra*, the Court of Appeals decided that the District of Columbia was legally authorized to consent to MRDDA consumers' surgeries. It also decided that the District of Columbia was not constitutionally required to inquire into the wishes of consumers who have never been competent to make medical decisions for themselves. Finally, in upholding the 2003 Policy, the Court of Appeals decided that the 2003 Policy afforded plaintiffs adequate legal process and therefore this court finds that prior policies did as well. To be sure, there are some differences between the legal process provided by the 2003 Policy and prior policies. Plaintiffs point specifically to two provisions of the 2003 Policy not present in prior policies: (1) the requirement that two physicians (instead of one) certify that the proposed surgery is clinically

---

[6] Plaintiffs also raise an equal protection claim in their complaint. Complaint ¶¶ 43, 55. Plaintiffs do not pursue this claim on remand. Pls.' Mot. Part. Summ. J. at 5.

indicated to maintain the health of the patient, and (2) the requirement that District of Columbia care givers make efforts to discuss the surgery with the patient at the level of patient comprehension.  Pls.' Opp. to Def.'s Mot. Summ. J. at 3-4.  Plaintiffs, however, fail to explain how these two provisions make the difference between unconstitutional and constitutional legal process.  Therefore, as to these claims, the Court of Appeals decision dictates that summary judgment must be granted in the District of Columbia's favor.

As discussed *supra*, however, the Court of Appeals did not reach the question of whether the District of Columbia violated MRDDA consumers' liberty interests in bodily integrity by failing to obtain consent from, or ignoring or overriding the wishes of, those persons authorized by District of Columbia law to consent on MRDDA consumers' behalf.  By deciding that the MRDDA Administrator did have authority to consent, the Court of Appeals did not decide that she could ignore or override the wishes of those specifically authorized to make such decisions under District of Columbia law.  A genuine issue of material fact remains in dispute as to whether the District of Columbia had a custom or policy of failing to obtain consent from, or ignoring or overriding the wishes of, those authorized to consent under D.C. Code § 21-2210, and therefore summary judgment is inappropriate on this contention.

**C.    Plaintiffs' Second Amended Motion for Class Certification Must Be Denied.**

Because the court has not granted summary judgment on liability to the plaintiffs, their second amended motion for class certification for damages is denied.

### III.  CONCLUSION

For the foregoing reasons, it is this 7th day of January 2009, hereby

**ORDERED** that plaintiffs' motions for partial summary judgment [#167] and for class certification [#166] are **DENIED**; and further

**ORDERED** that defendants' motion for summary judgment [#172] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that by January 23, 2009, the parties shall submit a joint case management report which shall include their proposal as to how the court should proceed in order to resolve the remaining issues in this case.  If the parties are unable to agree, each side shall submit its own report.

Henry H. Kennedy, Jr.<br>
United States District Judge